IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**W. BRYAN SUTTLES,**

    Plaintiff,

v.

**CAROLYN W. COLVIN,**
**Commissioner, Social Security**
**Administration,**

    Defendant.

6:15-CV-01602-AC

OPINION AND ORDER

**ACOSTA, Magistrate Judge.**

Plaintiff W. Bryan Suttles ("Suttles") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") in which she denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the court finds the decision of the Commissioner is not

1- OPINION AND ORDER

supported by substantial evidence in the record. Therefore, the ALJ's decision is reversed and this matter is remanded for further proceedings in accordance with this Opinion.

*Administrative History*

Plaintiff filed his applications on November 7, 2011, and alleged a disability onset date of April 1, 2008, due to "fractured lower back and left femur, neck and shoulder; concussions, torn ACL, right ankle screws, several more broken bones, pins, screws and straps in my body." Tr. 250.[1] Plaintiff amended his alleged onset date to November 7, 2011. Plf's Brf at 2. The application was denied initially and on reconsideration. An Administrative Law Judge ("ALJ") held a hearing on November 8, 2013. Tr. 32-79. At the hearing Plaintiff was represented by an attorney. Plaintiff and a vocational expert ("VE") testified.

The ALJ issued a decision on February 18, 2014, in which he found Plaintiff was not disabled. Tr. 13-22. That decision became the final decision of the Commissioner on June 23, 2015, when the Appeals Council denied Plaintiff's request for review. Tr. 1-6.

On August 24, 2015, Plaintiff filed a Complaint in this court seeking review of the Commissioner's decision.

*Background*

Plaintiff was born in 1964 and was 49 years old at the hearing before the ALJ. He testified he had six months of community college, although he told a treating physician he completed two years of technical college. Tr. 50, 394. Plaintiff has worked as a carpenter and assistant superintendent in construction. Tr. 43.

---

[1] Citations to the official transcript of record filed by the Commissioner on December 10, 2015, are referred to as "Tr."

2- OPINION AND ORDER

*Standards*

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.

3- OPINION AND ORDER

*Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

*Disability Evaluation*

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 ("Listed Impairments").

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

4- OPINION AND ORDER

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

*ALJ's Findings*

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since his April 1, 2008, alleged onset date. Tr. 15. His date last insured is December 31, 2012. Tr. 13.

At Step Two the ALJ found Plaintiff has severe impairments of lumbar radiculopathy, bilateral bunions, post-traumatic stress disorder ("PTSD"), and mood disorder/depression due to a general medical condition. Tr. 16.

At Step Three the ALJ determined Plaintiff's impairments did not equal in severity a listed impairment, and found Plaintiff retained the RFC to lift/carry ten pounds frequently and twenty pounds occasionally, sit for six hours during a normal eight-hour workday with normal breaks, and stand/walk for about two hours total during a normal eight-hour workday with normal breaks. Such work should allow the claimant to shift positions between sitting and standing every 30 minutes for

5- OPINION AND ORDER

comfort throughout the workday.

On an occasional basis he is able to use his bilateral upper extremities for overhead reaching and push-pull activities. On an occasional basis he is able to use his bilateral lower extremities for operation of foot controls; otherwise, he is able to perform push-pull activities without limit except as shown for lift/carry. He is able to balance frequently. He must avoid crawling and climbing ladders, ropes, and scaffolds. On at least an occasional basis he is able to perform all other postural activities.

Plaintiff must avoid concentrated exposure to workplace hazards such as unprotected heights, unguarded moving machinery, and similar activities. He is limited to unskilled work, with an SVP of one or two, with only simple work-related decision making required. Such work should be performed in an environment that involves few, if any, changes. Such work should involve no more than brief, superficial interaction with the public and this on no more than an occasional basis, and no more than frequent contact with co-workers. Tr. 17-18.

At Step Four the ALJ found Plaintiff was unable to perform his past relevant work. Tr. 20. At Step Five, the ALJ found Plaintiff retained the ability to perform a reduced range of light work, with representative occupations including inspector/small product assembler, small parts sorter, and hand packager. The ALJ concluded that Plaintiff was not disabled between his onset date of April 1, 2008 and February 18, 2014. Tr. 22.

*The Medical Evidence and Testimony*

I.      The Medical Record

The parties are familiar with the extensive medical record. It will be set out below when relevant.

II.  The January 19, 2012 Adult Function Report

Plaintiff completed an Adult Function Report in January 2012. Tr. 256-64. Plaintiff stated he was no longer able to "keep up the high demanding level of production in the building and construction trades." Tr. 256. He was not able to carry the necessary tools and materials, and was unable to walk, stand, stoop, kneel, bend, climb, crawl, or stretch out while working. Plaintiff wrote that "any extended time of any of these functions causes extreme pain in my lower back, neck and between my shoulder blades." Tr. 256-57. He asserted that lifting heavy objects and tools caused pain and stiffness in his upper left femur that would not resolve for two to three days. Plaintiff wrote he was unable to carry fully-loaded carpenter bags around his waist, and he could not keep pace or climb as necessary. He had trouble keeping his balance and had to change position every ten to thirty minutes.

Plaintiff does basic household chores but "most of my day is watching [television], surfing internet, naping [sic] often several times daily." Tr. 258. He cannot jog or run, and cannot sleep more than about an hour, the effect of which is to leave him exhausted, irritable, and depressed. It takes much longer to get dressed due to pain and stiffness, and sometimes he is in bed for days at a time. Tr. 259. He prepares simple microwaveable meals once or twice a week. He does two loads of laundry a week, and picks up dishes and trash periodically. He lives with friends. He grocery shops "in short, quick trips or I won't go." Tr. 260. He watches sports and movies with friends, and goes to his friend's house. Tr. 261. Pain interferes with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, seeing, memory, completing tasks, and concentration. Tr. 262.

Plaintiff can walk two to three city blocks before needing to sit and rest for about 15 minutes.

7- OPINION AND ORDER

His ability to pay attention varies with his pain.

III.   Testimony at November 8, 2013 Hearing

Plaintiff testified that it took about a year to walk after his July 2006 motorcycle accident. Tr. 43. He worked after his accident as an assistant superintendent in construction for three-to-four months. Tr. 44. Plaintiff believed he could lift 20 pounds, and his doctor told him not to lift more to avoid back pain. Tr. 46. He could stand in one spot for 20-to-30 minutes before developing severe pain in his lower back, could walk five city blocks, and sit for thirty minutes. Tr. 46-47. He must continuously shift his weight to prevent back pain. Plaintiff believed his back pain was the biggest impediment to working full-time.

Plaintiff has had no treatment for his back pain since 2008 except the medications Meloxicam, Naproxyn, Ibuprofen, Flexeril, and Neurontin. Tr. 47. He has never received mental health treatment. He attended a DUI diversion class in 2007. Plaintiff testified he goes shopping about once a week with his girlfriend, but could shop by himself. Tr. 51. He does household chores such as sweeping and food preparation, but he does not vacuum. Tr. 52. He can make a bed and take out trash if it is not too heavy. Tr. 53.

Plaintiff received unemployment compensation benefits from 2008 for about a year. Tr. 54. He testified he drinks a six- or 12- pack of beer a week, and smokes marijuana two or three times a year. Friends have given him Vicodin and Percocet when they saw he was in pain. He uses a walking stick since his accident. Tr. 55. He bought a back brace and wears it once or twice a week. Tr. 56. Plaintiff had not ridden his motorcycle for several months, but previously rode 25-to-50 miles a month. Tr. 57.

Plaintiff testified that he spends most of his day lying down and watches six-to-eight hours

8- OPINION AND ORDER

of television each day. Tr. 58. He injured himself in 2011 by attempting to pick up a 50 pound air compressor. Tr. 59. He did not seek medical attention because he did not have insurance. Tr. 64. His left leg is always numb from the mid thigh to his foot. Tr. 60. The leg tingles with pins and needles and has since the accident. His worst pain is in the lower back. Tr. 61. Plaintiff last worked in March 2008. Tr. 63.

*Discussion*

Plaintiff contends the ALJ erred by: (1) failing to develop the record; (2) finding Plaintiff less than fully credible; (3) failing to credit the opinions of the examining physician; and (4) failing to credit lay witness testimony. Because the first issue is dispositive, the court need not address the additional allegations of error.

The ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). To that extent, the proceedings are not adversarial, and the Commissioner shares the burden of proof at all stages. *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir. 1991).

On October 1, 2013, Plaintiff requested that the Commissioner obtain his treatment records from the Riverstone Clinic because he could not afford them. Tr. 37-39, 297, 300. The Commissioner requested the records on October 9, but had not received them by the time of the November 8, 2013 hearing. Tr. 37-38, 48. The ALJ questioned Plaintiff's alleged onset date, and counsel responded he would wait until the additional records were received to discuss a possible amended onset date. Tr. 41, 77.

The ALJ noted at the hearing the only treatment records in the file covered the time period

9- OPINION AND ORDER

July to September 2006, two years prior to the original alleged onset date and seven years before the hearing. The ALJ said "you're asking me to hang a decision of disability on basically nothing." Tr. 37-38. Plaintiff testified he had received treatment at the Riverstone Clinic from Drs. Jensen-Fox and Seidel. Tr. 40, 46, 48. The ALJ nonetheless issued his decision without obtaining or considering any records documenting the treatment Plaintiff received after 2006.

The Commissioner argues the ALJ satisfied the burden to develop the record, noting the agency ordered three consultative evaluations. Tr. 305-09, 313-18, 320-24. On February 16 and August 21, 2012, DeWayde C. Perry, M.D. examined Plaintiff and diagnosed bilateral hallux vagus and lumbar radiculopathy. Tr. 305-09, 320-24. He assessed no sitting limitation and a standing/walking capacity of six hours. Tr. 308, 324.

On August 20, 2012, Pamela Roman, Ph.D., administered a psychological evaluation. She conducted a clinical interview and administered the Wechsler Memory Scale, Revised; the Digit Span Subtest from the Wechsler Adult Intelligence Scale, Fourth Edition; the calculation subtest of the Woodcock-Johnson III, Tests of Achievement; the Beck Anxiety Inventory; and the Beck Depression Inventory. Tr. 313.

Plaintiff reported he lived with friends or his mother. He had a "rough" childhood, and had not worked since his accident. Tr. 314. Plaintiff reported he had no medical insurance and had not seen a physician since he left the hospital in 2006. He took Aleve for pain and Vicodin or Percocet when he could get it. His pain was usually at seven-out-of-ten. He slept poorly and had intense muscle spasm. Plaintiff reported he last smoked marijuana several years ago.

Dr. Roman diagnosed PTSD, Mood Disorder (depression) due to general medical condition, muscle spasm, poor sleep, and chronic pain. Tr. 313-19. She concluded Plaintiff "would be

10- OPINION AND ORDER

unreliable and undependable in maintaining attention and concentration throughout a normal work week and work day." Tr. 317.

The ALJ held the record open to wait for the additional records and to receive argument from Plaintiff's counsel regarding an amended onset date. Tr. 77-78. However, no additional medical records or briefing was received between the hearing and the ALJ's decision, which was issued more than four months after the records were requested. Tr. 13. There is no evidence that the ALJ or Agency re-contacted the treating provider or notified Plaintiff's counsel that they could not obtain the records or would make no further efforts to do so.

After the ALJ's decision, Plaintiff submitted additional medical evidence to the Appeals Council. Tr. 383-404. The Appeals Council considered the additional evidence and found the information did not provide a basis for changing the ALJ's decision. Tr. 1-2. The court must consider this evidence because it is part of the administrative record, even if not part of the record before the ALJ. *Brewes v. Comm'r*, 682 F.3d 1157, 1163 (9th Cir. 2012), citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007)(when Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the additional evidence submitted to the Council).

The Commissioner contends the new evidence does not disturb the ALJ's findings, noting Plaintiff completed an Adult Health History form in August 2012 indicating he had no problems with routine tasks at home, and engaged "in regular physical activity" of "walking." Tr. 398, 397. On the same form, however, Plaintiff answered "Exercise: Activity" with "not really." Tr. 398. The Commissioner argues Plaintiff was observed to be alert and oriented with good eye contact. Tr. 384, 388, 394. The new evidence before the Appeals Council is summarized below.

11- OPINION AND ORDER

Plaintiff was first seen in the clinic on August 22, 2012. Tr. 394-93. Plaintiff reported he had been unable to work consistently since his 2006 accident. He complained of chronic back pain, spasms, and left lower extremity pain, for which he took ibuprofen and Aleve. He slept an average of three hours per night. He used marijuana. Plaintiff did not have an antalgic gait, he had good range of motion in his extremities, with full range of motion in the hips and knees with normal flexion and extension. He had mild tenderness over the lumbosacral spine, and went from lying to sitting easily. Tr. 393. Christine Jensen-Fox, M.D., diagnosed chronic pain syndrome with chronic left lower extremity pain and spasm and low back spasm. She prescribed trazodone for sleep and Flexeril for spasm.

In February 2013 Kristi Seidel, M.D., examined Plaintiff, at which time Plaintiff was uninsured. Tr. 387-89. Dr. Seidel noted 2006 hospital records documenting a L5 spondylolysis bilaterally with spondylolisthesis of L5 on the sacrum of 9.2 mm and anterior spondylolisthesis. "The patient is describing significant pain right at that level currently. He states he feels a grinding and a sharp stabbing pain right at the base of his spine with anterior flexion or posterior flexion." Tr. 389. Plaintiff thought Flexeril initially worked well, but was not working as well at this time. He could not sleep more than two or three hours due to pain in his low back and right anterior hip. He had significant muscle spasm in the left thigh, with numbness and the left leg had buckled on him about three times in the past six months. Dr. Seidel noted Plaintiff moved "very stiffly and slowly." Tr. 388. He had decreased range of motion in the neck, tenderness at T2, and some palpable mild paraspinal muscular spasm. He was tender from L2 to L5 with hypertrophy along the vertibral bodies. Plaintiff was tender over the left SI joint, and range of motion at the waist was 50% in all planes. He had a wide-based gait, with "no obvious atrophy, although the patient is thin." Tr. 388.

12- OPINION AND ORDER

His gait was slow and painful, and he had negative straight leg test bilaterally. Dr. Seidel diagnosed chronic low back pain secondary to postsurgical changes, and prescribed Zanaflex and Neurontin. Tr. 387. He did not have insurance for physical therapy.

On March 25, 2013 Dr. Seidel noted Plaintiff was fatigued and Zanaflex was not effective. Neurontin caused him to not think clearly. Tr. 386. Plaintiff mowed the lawn and was unable to get out of bed the following day. Under "Significant Findings," Dr. Seidel wrote patient "in pain - stands through most of appt." Tr. 386. She noted paraspinal tenderness and decreased range of motion, discontinued the Neurontin which caused headaches, discontinued the Zanaflex as ineffective, increased the flexeril and prescribed meloxicam. An April 29, 2013 note indicates meloxicam "worked great," but was discontinued due to stomach ache. Tr. 385.

Dr. Seidel saw Plaintiff on April 29, 2013. Tr. 384. Plaintiff reported the Meloxicam worked well and he had "almost no back pain and was able to be active." Tr. 384. Side effects caused him to discontinue the medication. "He is discouraged because it worked so well." Id. Dr. Seidel noted that "the patient is in pain and it [is] obvious on general exam. He stands halfway through the appointment as sitting worsens the pain." He had a normal gait. He had a positive anterior straight leg raise on the left with no obvious atrophy. Dr. Seidel prescribed Omeprazole and continued the Meloxicam.

The Commissioner argues that the new treatment records do not disturb the ALJ's findings. The ALJ, however, found Dr. Roman's opinion that Plaintiff would be undependable in maintaining concentration was "unsupported by the medical evidence of record." Tr. 19-20. Dr. Seidel's description of "obvious" pain is medical evidence supporting Dr. Roman's opinion regarding concentration. Dr. Seidel's findings regarding Plaintiff's reduced range of motion and inability to

13- OPINION AND ORDER

sit due to pain supports both Dr. Roman's opinion and the opinions of the lay witnesses which the ALJ rejected. Tr. 20. The ALJ's own finding that the record before him in November 2013 had no medical records more recent than 2006 should have triggered his duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). Here, the ALJ essentially found on the record that the record was inadequate to allow for a proper evaluation. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)(quoting *Smolen*, 80 F.3d at 1288).

Before making a determination about whether a claimant is disabled, an ALJ is obligated to develop and consider the claimant's complete medical history for at least the 12 months prior to the month in which the claimant filed his application unless there is a reason to believe that development of an earlier period is necessary. 20 C.F.R. § 416.912(d). The regulation provides that the Social Security Administration "will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." *Id.* "Every reasonable effort" means the agency will make an initial request for evidence from a claimant's medical source, and, if the evidence has not been received after 20 calendar days, the agency will make a followup request for the records. 20 C.F.R. § 416.912(d)(1). There is no evidence that the agency made a followup request for Plaintiff's records.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038, 121 S. Ct. 628, 148 L. Ed. 2d 537 (2000). Because there are outstanding issues to be resolved, this matter is remanded for consideration of all of the medical evidence at each step of the sequential analysis and any relevant credibility findings.

On this record, the ALJ's decision is not supported by substantial evidence. This matter is remanded for consideration of the entire medical record.

*Conclusion*

Accordingly, this matter is remanded pursuant to Sentence 4 of 42 U.S.C. § 405(g) for further proceedings in accordance with this Opinion and Order.

IT IS SO ORDERED.

DATED this 27th day of December, 2016.

_____
JOHN V. ACOSTA
United States Magistrate Judge